Forde, J.
The plaintiff, Margaret B. Spenlinhauer, appeals from the entry of summary judgment in favor of the defendants, her former attorneys in a divorce action. The divorce action was initiated in 1988 by one of the plaintiff’s prior attorneys. In the instant action, brought pursuant to M.G.L.c. 93A, §9, Spenlinhauer, acting pro se, filed suit against this law firm and its partners, alleging that the defendants failed “to provide the legal services they had both stated and implied they would provide.”
According to the Complaint, defendant Kane, principal of the defendant law firm, in order to induce her to retain the defendants, represented and implied to Spenlinhauer that they would pursue her divorce action on the ground of cruel and abusive treatment. The Complaint further alleged that Kane never intended to pursue the ground of cruel and abusive treatment and that he changed the grounds for the action without Spenlinhauer’s consent and against her wishes. This, the plaintiff complains, amounted to the misrepresentation of a material fact, because, had she known that the defendants would not proceed on the ground of cruel and abusive treatment, she would have found another attorney to represent her. Justifiable reliance on this misrepresentation, according to the plaintiff, constituted a willful and knowing violation of Section 93A which resulted in her injury.
*156 History Of The Underlying Action[2]
In December 1990, plaintiff interviewed Paul Kane twice, tape recording the interviews with his consent. She did this before retaining defendants as the third successive law firm hired to represent her in her divorce action. The Complaint in plaintiffs divorce action, filed in June 1988, cited two grounds — cruel and abusive treatment (M.G.L.c. 208, §1), and irretrievable breakdown of the marriage (M.G.Lc. 208, §1B). The Complaint has never been modified. The Probate and Family Court Department, Plymouth Division, permitted the plaintiffs husband to file a counterclaim based on irretrievable breakdown of the marriage. To this Court’s knowledge, no judgment of divorce nisi has issued to date.
During the course of the divorce litigation, the parties agreed to submit to binding arbitration. The arbitrator held sixteen days of hearings on the matter between September 16, and November 11, 1991. The parties submitted proposed findings of fact and conclusions of law to the arbitrator on or before February 24,1992. On January 27,1993, the arbitrator delivered to the parties his findings of fact, conclusions of law, and his proposed judgment.[3] Both parties appealed the arbitrator’s decision. On February 19,1993, the parties agreed to hold the divorce in abeyance in anticipation of obtaining certain documents from the FDIC. In May, 1993, Spen-linhauer asked the defendants to withdraw as her counsel, from the divorce action.
Almost three years later, on January 26,1996, plaintiff initiated the instant action by sending a demand letter, pursuant to M.G.L.c. 93A, §9, to the defendant law firm. When the defendants’ response of February 23, 1996, did not satisfy her demands, Spenlinhauer filed suit on February 25, 1996, demanding damages of approximately $1.4 million, trebled pursuant to the provisions of c. 93A The defendants moved for summary judgment a year later. The motion judge heard the arguments of both parties, and, with the benefit of briefs filed by both sides, allowed the motion for summary judgment. At that time, no judgment of divorce nisi had yet issued from the probate court; and this court is unaware of any change in status of the underlying divorce action.
Standard of Review
In reviewing a grant of summary judgment, the court determines whether, viewing the evidence in the light most favorable to the nonmoving party (the plaintiff here), all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P., Rule 56(c), BayBankBornhofft, III, et al., 427 Mass. 571, 573 (1998). Where the opposing party bears the burden of proof at trial, the moving party is also entitled to summary judgment if it demonstrates, by a method approved under R 56(c), that the party opposing the motion has no reasonable expectation of proving an essential element of its case and, if the opposing party fails to produce countervailing materials to demonstrate otherwise. Id,., citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
*157 Discussion
The motion judge allowed the defendants’ motion for summary judgment “essentially for the reasons set forth in the defendants’ memorandum and accompanying data in support of that motion.” These reasons were, in essence, that the plaintiff could not establish any intentional misrepresentations or negligence on the part of the defendants and could not prove compensable damages. While the plaintiff’s allegations demonstrate that she is personally aggrieved by her attorneys’ handling of her case and by the personal attention she may or may not have received from her attorneys, none of her claims amounts to a violation of Chapter 93A. The motion judge determined that the record to be established at trial already existed and that, based on the record, the disputed issues were the result of differences in “style rather than substance.” After a thorough review of all of the evidence of record,[4] this Court agrees.
In order to prevail under Chapter 93A, a plaintiff must do more than articulate a grievance. She is required to demonstrate a violation by the defendants of a legal right belonging to her, by some means involving unfair or deceptive acts or practices. Donnelly v. Suffolk University, 3 Mass. App. Ct. 788 (1975) (aggrieved applicant’s rejection not violation of c. 93A, given school’s stated policy of giving weight to alumni recommendations). M.G.Lc. 93A is not intended to provide remedies for lack of complete candor or simple grievances. See, M. GILLERAN, THE LAW OF CHAPTER 93A Sec. 4:2 (1989), and cases cited therein.
The plaintiff alleges that the defendants were legally negligent in their representation. Absent “conduct involving dishonesty, fraud, deceit or misrepresentation,” even allegations of legal negligence are insufficient to state a Chapter 93A violation. Poly v. Moylan, 423 Mass. 141, 151 (1996) (attorney’s negligence in researching certain legal issues not a violation of c. 93A absent dishonest, deceitful or fraudulent conduct). See, also, Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 761 (1996) (no reasonable expectation of proving a violation of c. 93A where no evidence that defendants knowingly misstated value of property or prepared report with wilful disregard of facts sufficient to amount to fraud); Damon v. Sun Co., 87 F.3d. 1467, 1484 Fn. 10 (1st Cir. 1996) (to form basis of c. 93A violation, negligence must be paired with unfair or deceptive practices).
The plaintiff alleges that the defendants’ practices were, indeed, unfair and deceptive. The essence of the plaintiff’s argument, difficult as it is to cull from the lengthy, and sometimes garbled, pleading and supporting documentation filed in opposition to the defendants’ summary judgment motion, is that defendant Kane represented to her “that he would bring out her husband’s negative conduct toward his family" and that he intentionally failed to do so during the course of the arbitration. Thus, the plaintiff argued, the representation provided by the defendants was contrary to her wishes and in total disregard of the contractual arrangements, i.e., the divorce proceedings were conducted as if she sought her divorce on the grounds of “irreconcilable differences” (in other words, on “no-fault” grounds), rather than on “fault” grounds.
After combing the record carefully, including the plaintiff’s pleadings and her voluminous “transcriptions” of her conversations with the defendants, this Court can find no indication that her contract with the defendants required that they pursue the litigation exclusively under “fault” grounds. At the time that the plaintiff approached the defendants, seeking to retain them, the plaintiff’s complaint for *158 divorce had long since been filed with the court setting forth dual theories of “cruel and abusive treatment” and “irretrievable breakdown” of the marriage. The plaintiff does not dispute this fact. Neither does she allege in any submission to this Court that she requested the defendants, at any time, to withdraw her request for a divorce on the no-fault grounds. In fact, the plaintiff conceded at deposition that, before retaining the defendants, she never raised the question of the existence of grounds for a divorce under “fault” grounds.[5] In the absence of an express claim that she bargained for a divorce solely under “fault” grounds, and evidence to support that claim, we are unwilling to impute such an unusual contract and charge the defendants with its breach.
The record indicates that the divorce litigation proceeded on both grounds set forth in the plaintiff’s complaint. The defendants submitted the case on both grounds to the arbitrator, as the introductory portion of his findings of fact and conclusions of law demonstrates. However, as the affidavit of defendant Kane, submitted in support of the motion for summary judgment indicates, it was the attorney’s opinion that the plaintiff “did not have a good faith basis for seeking a divorce on the grounds of cruel and abusive treatment pursuant to Massachusetts law.”[6]
The rules which govern attorneys in their practice of law in Massachusetts forbid the assertion of a claim as to which the attorney is unable to make a good faith argument on the merits. The record evidence in this case supports the attorney’s conclusion in this regard. Based on the plaintiff’s sworn testimony, other than one incident early in the more than twenty year marriage, neither the plaintiff nor the parties’ children were physically or verbally abused. As the plaintiff describes it, the most egregious offense suffered by the plaintiff at the hands of her husband occurred a year or two after the divorce complaint was filed. When questioned under oath on the issue of cruel and abusive treatment, the plaintiff testified that, because of her husband’s stinginess, she and one of her daughters were forced to eat chili and potatoes while on a skiing vacation in 1990.[7]
Considering the purpose of the statutes applicable to divorce proceedings, particularly M.G.L.c. 208, §34, which is to provide for equitable division of the property interests of partners in a marriage, the attorney’s conclusion that another approach would be more beneficial to his client is not an unreasonable one. According to defendant Kane, he determined that putting forth such an argument could create a negative perception of his client’s motives, and, therefore, would not be strategically in his client’s best interests.[8] Although a reasonable and perhaps prudent litigation strategy, the flaw in proceeding in this manner appears to have arisen from the defendants’ failure to communicate this strategy unequivocally to the client before or during the arbitration hearings.
The above, and a plethora of other allegations of intentional misrepresentation on the part of the defendants — such as their failure to meet with her each morning and evening, before and after the arbitration hearings as promised — make up the sum and substance of the plaintiff’s complaints concerning the deficiencies in the handling of her case. In sum, the allegations attempt to describe a breach of contract. Every breach of contract, however, does not necessarily rise to the level of a c. 93A violation. As the court found in Chedd-Angier Production v. Omni Publications Int., 756 F.2d 930, 939 (1st Cir. 1985), the actions of one party to a contract may reflect a lack of complete candor between the parties; but, absent falsity or *159 deceit, this does not amount to a violation of c. 93A. In that case, the defendant agreed orally to engage the plaintiff in making a television series and publicly promoted their collaboration on the project. The evidence showed that the defendant had deliberately delayed notifying the plaintiff when it changed the plan and decided to make the series in-house. Nevertheless, the court found no violation of c. 93A because the plaintiffs could not reasonably have relied on statements made in the promotional materials, where there had been no meeting of the minds and no contract had been drawn up memorializing such terms.
At common law, “false statements of opinion, of conditions to exist in the future, or of matters promissory in nature, are not actionable.” Yerid v. Mason, 341 Mass. 527, 530 (1960) (building owner’s assurances to prospective purchasers that drain being installed would keep cellar floor dry did not constitute false representation of fact permitting rescission). See also, Harris v. Delco Products, 305 Mass. 362, 365-66 (1940) (statement of well digger that there was “definitely no chance of striking saltwater” not actionable as misrepresentation).
Chapter 93A created new substantive rights. Underwood v. Risman, 414 Mass. 96, 101 (1993). Under c. 93A, what is considered “an actionable ‘unfair and deceptive practice’ goes far beyond the scope of the common law action for fraud and deceit.” Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975). However, while it is possible for a misrepresentation in the common law sense to form the basis of a claim under c. 93A, if the plaintiff is unable to produce evidence that demonstrates the essential elements of a claim for fraud (or deceit) at common law, as a matter of law the plaintiff would have no reasonable expectation of proving a violation of c. 93A Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct 755, 761 (1996) (no reasonable expectation of proving a violation of c. 93A where no evidence that defendants knowingly misstated value of property or prepared report with wilful disregard of facts sufficient to amount to fraud). Indeed, a set of facts which may result in a valid claim under the common law may, nevertheless, fail to rise to the level of a violation of the c. 93A Poly v. Moylan, 423 Mass. 141, 151 (1996) (judge may make independent, different findings on c. 93A aspect of case where facts gave rise to parallel common law claims).
The motion judge found that the plaintiff had presented her case and that it was ripe for judgment on the evidence presented. Based on the arguments of the defendants and the supporting documentation presented, the court determined that plaintiff could not establish intentional misrepresentations or negligence on the part of the defendants. We agree.
An example of the plaintiff’s claims of intentional misrepresentation made by the defendants is the argument that, in a book he authored, defendant Kane stated that the concept of conduct includes economic conduct. As a result of this statement, and others, the plaintiff alleges that she was misled and deceived into believing that the defendants intended to pursue her case on the ground of cruel and abusive treatment. Even assuming, arguendo that such statements had been made to her, and that the statements were false, false statements of opinion which appear, at best, to be aimed at evoking heightened expectations do not rise to the level of deceit necessary to establish a violation of the statute. Tagliente v. Himmer, 949 F.2d 1 (1st Cir. 1991) (seller’s misrepresentation of extent of access and visibility of parcel from highway nothing more than opinion, therefore, not actionable). Winter Panel Corp. v. Reichold Chemicals, 823 F. Supp. 963, 974 (D. Mass. 1993) (promise to supply chemical system to produce marketable installation panels not actionable where systems known to be in experimental stage). The plaintiff in this case could not reasonably have relied on any statements intended to convince her that her case could proceed under the ground of cruel and abusive treatment, given that evidence of such treatment borders on being non-existent in her case.
Whether or not conduct Ms within the scope of c. 93A ordinarily depends on the circumstances of each case. Italian Touch v. Gatto, 1990 Mass. App. Div. 37, 38 (1990). *160 It is not the plaintiffs definition of the act which controls but the context in which the conduct occurred. Barden v. Harpercollins Publishers, 863 F. Supp. 41, 46 (D. Mass. 1994). The motion judge determined, based on the facts presented in support of and in opposition to the summary judgment motion, that the conduct alleged by the plaintiff, did not rise to the level of a c. 93A violation. The record supports the court’s decision.
Putting aside the question of liability, even if the plaintiff were able to prove a violation of c. 93A, she cannot, as the trial court found, establish that she has been damaged financially by the defendant’s handling of her case. The plaintiff bears the burden of proving entitlement to damages as an element of her claim. Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 48, fn. 2 (1998). While it is true that a plaintiff need not prove damages with mathematical exactness, “damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.” Lowrie v. Castle, 225 Mass. 37, 51 (1916) (anticipated profits in new business found not to be susceptible of calculation, particularly given plaintiffs tenure as an employee at will).
The plaintiff alleges substantial damages, arguing that, because of the defendants’ flawed representation, the arbitrator significantly undervalued her husband’s worth. However, based on the plaintiff’s failure to present expert testimony, necessary to prove her theory that her husband’s ownership in the multi-million dollar family business was greater than it was determined to be by the arbitrator, she lacks the ability to prove an essential element of her claim. We agree with the motion judge that, under the circumstances of this case, any calculation of damages would necessarily be speculative. Plaintiff has yet to receive any award of property in the underlying divorce action. Both parties having appealed the arbitrator’s proposed award, no judgment nisi has been granted in the underlying matter.
Plaintiff has demonstrated no injury as a result of the defendants’ alleged conduct and thus, no damages. The fact that the plaintiff has “alleged” a violation of the statute does not entitle her to an award of twenty-five dollars. Under the statute, such an award is permitted only “if the court finds for the petitioner,” which it has not done here. Summary judgment for the defendants is, therefore, affirmed.

 We summarize the facts as derived, for the most part, from the undisputed facts submitted on the motion for summary judgment, and in the plaintiff’s opposition thereto. See, Community National Bank v. Dawes, 369 Mass. 550, 551 (1975).

 The proposed judgment included awards to the plaintiff of (1) the family residence worth $940,000 and all personal property and furnishings therein; (2) $65,000 per year in alimony until death of either party, plaintiff’s remarriage, or the husband’s death; (3) child support of $35,000 per year; (4) $137,471 from husband’s retirement fund; (5) medical insurance paid for by husband; (6) $150,000 for* legal fees and $125,000 toward expert witness fees; (7) $751,635 in annual installments of $75,000 plus interest at prime rate.

 The record compiled by the appellant, while extensive, contains many parts and pieces of the appellant’s “transcriptions,” and what appear to be randomly selected pages of depositions. An Appellate Division may consider only the evidence contained in the report before it. Daigle v. Narkun, 48 Mass App. Dec. 27 (1972).

 Spenlinhauer Deposition, Attachment 3 to motion for summary judgment, p. 100.

 Kane Affidavit, Attachment 7 to motion for summary judgment, para. 4.

 Spenlinhauer Dep., pp. 51-95.

 Kane Affidavit, para. 7